UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ULYSSES WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 6121 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

The Court denies Defendant Wexford Health Sources, Inc.'s motion to dismiss the third amended complaint [62]. See Statement.

## STATEMENT

Plaintiff Ulysses Williams, an inmate at the Dixon Correctional Center ("DCC"), filed this action pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs. In his third amended complaint, Williams alleges that Defendant Wexford Health Sources, Inc. ("Wexford") has a policy or practice of engaging in cost-saving measures that caused substantial delays in treatment and his non-receipt of recommended treatment, all of which aggravated his injury and prolonged his pain and suffering. Wexford moves to dismiss the third amended complaint, arguing that Williams has not alleged an underlying constitutional violation to support his *Monell* claim and that his allegations of an unconstitutional policy or practice fail to state a claim.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In his third amended complaint, Williams alleges the following, which the Court presumes to be true for purposes of this Order: Williams suffers from retinitis pigmentosa, a degenerative eye disease, and is legally blind. On December 16, 2014, Dr. David T. Hicks, an optometrist at DCC, saw Williams for complaints of eye irritation and blurriness when in

sunlight, headaches, and decreased vision. Dr. Hicks prescribed Williams ultraviolet sunglasses. It took Wexford until April 8, 2015, to send the prescription to Wexford's utilization system for authorization, and on April 9, Dr. Catalino Bautista, DCC's medical director, denied the prescription on the basis that the ultraviolet sunglasses were not medically necessary. On June 8, Dr. Hicks prescribed "cheaper, and less effective, 'photogrey' or 'transitional' lenses" and also referred Williams to the Retina Clinic at the University of Illinois at Chicago ("UIC"). Doc. 61 ¶ 44. Williams received the photogrey lenses but they did not resolve his eye problems. Wexford approved the referral to UIC on June 18, but Williams did not see a UIC specialist until September 8. The UIC specialist recommended dark sunglasses, a low vision evaluation at UIC, and rehabilitation and training for low vision. Dr. Chamberlain, DCC's new medical director, approved the recommendations on September 10. But it took over a month for Williams to receive the dark sunglasses, which also did not help his problems. On December 21, Wexford authorized a visit to the UIC low vision clinic but did not schedule the consultation until April 25, 2017.[1] At this visit, UIC provided Williams with ultraviolet sunglasses, which Dr. Hicks had prescribed in December 2014. The UIC specialist also recommended retinal dystrophy gene therapy, a therapy Williams has not received. Wexford also has not returned Williams to the low vision clinic since his April 2017 visit despite the specialist's recommendation for annual visits.

A private company may be held liable under § 1983 for deliberate indifference pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *See Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) (*Monell* liability "applies in § 1983 claims brought against private companies acting under color of state law"). Liability may rest on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted). Additionally, Williams must "plead[ ] factual content that allows the Court to draw the reasonable inference that [Wexford] maintained a policy, custom or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted).

First, Wexford argues that Williams cannot proceed on his *Monell* claim because, considering the second amended complaint, Judge Kapala dismissed Williams' claim against Dr. Bautista and Dr. Chamberlain. *See* Doc. 52. But Wexford mischaracterizes Judge Kapala's ruling as holding that Williams' "underlying medical care and treatment at issue in this case do not amount to a violation of his constitutional rights," Doc. 62 at 4, where Judge Kapala instead only determined that Williams had not sufficiently alleged a claim against these individuals and provided Williams with leave to amend. Williams chose instead to focus solely on Wexford's liability in the third amended complaint. Although "it is somewhat unusual to see an Eighth Amendment case relating to medical care in a prison in which the plaintiff does not argue that

---

[1] In reply, Wexford notes that Williams' medical records indicate he saw an ophthalmologist on April 7, 2016, which Williams does not mention in the third amended complaint. At this stage, the Court must take Williams' allegations as true.

the individual medical provider was deliberately indifferent to a serious medical need . . . . if institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017). Therefore, the lack of an underlying claim against the medical providers at DCC does not preclude Williams' claim against Wexford at this stage, with the question of whether Wexford's policies caused Williams an actionable harm left for discovery.

Next, Wexford argues that Williams uses only vague, conclusory language to support his allegations of a widespread policy or practice. The Court acknowledges that Judge Kapala found similar allegations in the second amended complaint vague and conclusory, *see* Doc. 52 at 5–6, but upon an examination of the allegations in the third amended complaint and recent caselaw considering the pleading requirements for *Monell* claims, the Court respectfully disagrees. The Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Instead, *Monell* claims may proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (quoting *Riley v. Cty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)). Here, Williams has included sufficient factual allegations to put Wexford on notice of its alleged wrongdoing, tying the delays in his treatment and the denial of recommended treatment to Wexford's cost-cutting policies. He even cites to Dr. Hicks' notes about the difficulty in obtaining the prescribed ultraviolet lenses because of Wexford's refusal to pay for such lenses. Further, the fact that UIC ultimately provided Williams with these ultraviolet lenses over two years after Dr. Hicks originally prescribed them suggests the delay could be attributed to Wexford's cost-cutting measures and have caused him injury. *See Simmons v. Godinez*, No. 16 C 4501, 2017 WL 3568408, at *4 (N.D. Ill. Aug. 16, 2017) (collecting cases where plaintiff alleged that cost-cutting measures resulted in plaintiff receiving inadequate medical care, noting that in Simmons, Wexford employees told plaintiff that they could not send him to see an outside doctor because of the cost).

Wexford also argues that Williams may not rely only on his personal experience with Wexford's medical care as the basis for his *Monell* claim. But again, the Seventh Circuit has indicated that at the motion to dismiss stage, a plaintiff may do just this instead of having to plead examples of other individuals' experiences. *See White*, 829 F.3d at 844 (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)). Therefore, Williams' claims that Wexford's cost-cutting policies, evidenced by its delays in scheduling outside consultations and following the outside recommendations in this case, suffice at the pleading stage to state a *Monell* claim against Wexford. *See Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, a single incident cannot establish a *Monell* claim, but a plaintiff "need only allege a pattern or practice, not put forth a full panoply of evidence from which a reasonable factfinder could

conclude such a pattern exists" at the pleading stage). And although not necessary, Williams' allegations about the expert findings in *Lippert v. Ghosh*, No. 10 C 4603 (N.D. Ill.), add additional details suggesting the plausibility of Wexford's claimed cost-cutting measures. *See Steele v. Wexford Health Sources, Inc.*, No. 17 C 6630, 2018 WL 2388429, at *8 (N.D. Ill. May 25, 2018) ("[T]his is not the appropriate stage of this case for the Court to review the nuances of these reports or make factual findings regarding them. For now, it is enough that they lend further plausibility to the cost-cutting policy and practice allegations in Steele's viable *Monell* claim against Wexford."); *Arrington v. City of Chicago*, No. 17 C 5345, 2018 WL 620036, at *4 n.4 (N.D. Ill. Jan. 30, 2018) (considering DOJ report where plaintiff "alleges a custom or practice of excessive force among Chicago police officers, and the DOJ Report found such a custom or practice").[2] Discovery will uncover whether Williams can establish or prove his *Monell* claim, but at the pleading stage, he only need state a plausible claim for relief. *See Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) (noting that the "City's arguments that Plaintiff's allegations do not 'establish' the existence of a widespread policy are misplaced because at this stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has 'established' or 'proven' his claims"). The Court finds that Williams has done so here, pleading sufficient facts to provide Wexford with adequate notice of its alleged wrongdoing.

Date: November 27, 2019 /s/ Sara L. Ellis

---

[2] Wexford argues that the expert reports raise evidentiary concerns about their admissibility, but the Court does not find this the appropriate stage to address these concerns.

4